FILED
2022 Mar-18  PM 01:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ADAM JIMMERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:20-cv-01045-JHE |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION[1]

Plaintiff Adam Jimmerson ("Jimmerson") seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his request for reconsideration of the cessation of his disability insurance benefits ("DIB").  (Doc. 1).  Jimmerson timely pursued and exhausted his administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED,** and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

On September 10, 2013, Jimmerson applied for a period of disability and DIB.  (Tr. 195-201).  Jimmerson was found disabled beginning on August 24, 2013.  (Tr. 25, 68, 202).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 13).

In accordance with its regulations, the Social Security Administration conducted a review of Jimmerson's benefits. (Tr. 45, 58-60). On May 2, 2017, the agency determined Jimmerson's disability had ceased as of May 3, 2017. (*Id.*). Jimmerson requested reconsideration, and, after a hearing, the Commissioner's disability hearing officer affirmed the cessation of benefits. (Tr. 61, 68-79). Jimmerson then requested a hearing before an administrative law judge ("ALJ"). (Tr. 94). After a July 8, 2019 hearing (tr. 1072-1125), the ALJ issued an unfavorable decision on September 20, 2019, finding Jimmerson's disability had ended on May 1, 2017, and Jimmerson had not become disabled since that date. (Tr. 22-43). Jimmerson sought review by the Appeals Council, but it denied his request for review on July 8, 2020. (Tr. 1-8). On that date, the ALJ's decision became the final decision of the Commissioner. On July 23, 2020, Jimmerson initiated this action. (Doc. 1).

Jimmerson was 41 years old at the time of the ALJ's decision. (Tr. 35, 195). Jimmerson has a twelfth-grade education and prior work as a machine feeder and lubrication servicer/garage supervisor. (Tr. 33, 1119).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.

---

[2] In general, the legal standards applied are the same whether a claimant seeks supplemental security income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

"must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

Once disability has previously been established, the Regulations provide a seven-step process for determining whether a claimant continues to be disabled.  20 C.F.R. § 416.994(b)(5)(i-vii).  The Commissioner must determine in sequence:

(1)    Whether the claimant has an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does, the claimant's disability continues. If not, the evaluation proceeds to step two.

(2)    Whether the claimant has experienced medical improvement.  If the claimant has, the evaluation proceeds to step three; if not, the evaluation proceeds to step four.

(3)    Whether the claimant's medical improvement is related to her ability to work.  If it is, the evaluation proceeds to step five; if not, the evaluation proceeds to step four.

(4)    Whether an exception under 20 C.F.R. §§ 416.994(b)(3)-(4) applies. If no exception applies, the claimant's disability continues. If an exception in (b)(3) applies, the evaluation proceeds to step five. If an exception in (b)(4) applies, the claimant is not disabled.

(5)    Whether the claimant has a medically severe impairment or combination of impairments. If the claimant does, the evaluation proceeds to step six; if not, the claimant is not disabled.

(6)    Whether the claimant is unable to perform any past relevant work. If the claimant is unable to perform past relevant work, the evaluation proceeds to step seven; if not, the claimant is not disabled.

(7)    Whether the claimant is unable to perform any other work within the national economy.  If the claimant is unable to do so, the claimant is disabled; if not, the claimant is no longer disabled.

*Allen v. Astrue*, No. 3:11-CV-04322-KOB, 2013 WL 5519646, at *2 (N.D. Ala. Sept. 30, 2013)

(citing 20 C.F.R. § 416.994(b)(5)).  Medical improvement is defined as:

any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he] w[as] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments.

20 C.F.R. § 404.1594(b).

To terminate benefits, the Commissioner may not focus only on current evidence of disability, but must also "evaluate the medical evidence upon which [the claimant] was originally found to be disabled." *Solomon v. Comm'r, Soc. Sec. Admin.*, 532 F. App'x 837, 839 (11th Cir. 2013) (quoting *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984) (per curiam)).  To that end, "[a] comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam) (citation omitted).  The Commissioner's decision is based on the weight of the evidence, with "no initial inference as to the presence or absence of disability being drawn from the fact that [the claimant has] previously been determined to be disabled."  20 C.F.R. § 404.1594(b)(6).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

Prior to beginning the sequential evaluation, the ALJ identified the September 24, 2013 decision as the "comparison point decision" ("CPD"), which is the most recent favorable medical decision finding the claimant was disabled.  (Tr. 27).  The ALJ found that, at the time of the CPD, Richardson had the medically determinable impairment of neoplasm of the brain, which met Section 13.13A1 of the "listings" found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).  The ALJ also found that since May 1, 2017, Richardson had the medically determinable impairments of depression and astrocytoma.  (*Id.*).

At Step One, the ALJ determined that since May 1, 2017, Jimmerson did not have an impairment or combination of impairments that meets or medically equals one of the listings.  (Tr. 27-29).  At Step Two, the ALJ found medical improvement had occurred as of May 1, 2017.  (Tr.

29).  At Step Three, the ALJ found the medical improvement was related to Jimmerson's ability

to work because the impairments no longer met or medically equaled the same listing met at the

time of the CPD.  (*Id.*).  Because the ALJ found medical improvement, he proceeded to Step Five,

at which he found Jimmerson had continued to have depression and astrocytoma since May 1,

2017.  (Tr. 29-30).

Before proceeding to Step Six, the ALJ determined Jimmerson's residual functioning

capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. §

404.1545(a)(1).  The ALJ determined that, as of May 1, 2017, Jimmerson had the RFC to

> Perform medium work as defined in 20 CFR 404.1567(c) which allows
> occasional stooping and crouching; no climbing of ramps, ladders, or scaffolds;
> no unprotected heights, and no driving.  He should have no contact with the
> general public and occasional contact with co-workers and supervisors.  He is
> able to understand, remember, and carryout [sic] simple and routine tasks
> involving one or two step instructions.  He is able to attend and concentrate for
> two hour periods; no contact with the general public; occasional contact with
> coworkers and supervisors.

(Tr. 30).

At Step Six, the ALJ found Jimmerson had been unable to perform his past relevant work

as a machine feeder and lubrication servicer/garage supervisor.  (Tr. 33).  At Step Seven, the ALJ

determined jobs existed in significant numbers in the national economy which Jimmerson could

perform, based on his age, education, work experience, and RFC.  (Tr. 34).  The ALJ concluded

Jimmerson's disability ended on May 1, 2017, and that he had not become disabled again since

that date.  (*Id.*).  Therefore, the ALJ denied Jimmerson's claim.  (Tr. 34-35).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve

the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Jimmerson*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Jimmerson argues the ALJ erred in two ways: (1) by failing to properly apply the improvement standard in terminating his benefits; and (2) failing to accord appropriate weight to the opinions of various physicians. Although the undersigned concludes the ALJ did not err in applying the improvement standard, the ALJ's misstatements regarding evidence in the record potentially affected his evaluation of the opinion evidence.

### A. The ALJ Appropriately Applied the Improvement Standard

Jimmerson's first argument is not supported by any case-specific analysis or citations to the record. Instead, he blockquotes lengthy excerpts from opinions in which courts found ALJ error in applying the improvement standard. Contrary to Jimmerson's overall claim, the ALJ appropriately applied the standard, as discussed below.

Jimmerson was originally found disabled at Listing 13.13A1. According to the version of the listings in effect on September 24, 2013 (the date of the CPD), the full version of Listing 13.13 consists of:

13.13 Nervous system. (See 13.00 K6.)

A. Central nervous system malignant neoplasms (brain and spinal cord), as described in 1 or 2:

> 1. Highly malignant tumors, such as medulloblastoma or other primitive neuroectodermal tumors (PNETs) with documented metastases, grades III and IV astrocytomas, glioblastoma multiforme, ependymoblastoma, diffuse intrinsic brain stem gliomas, or primary sarcomas.

      2. Progressive or recurrent following initial antineoplastic therapy.

OR

  B. Peripheral nerve or spinal root neoplasm, as described in 1 or 2:
      1. Metastatic.
      2. Progressive or recurrent following initial antineoplastic therapy.

20 C.F.R. Part 404, Subpart P, App. 1 (effective November 5, 2009-July 19, 2015,

https://secure.ssa.gov/poms.nsf/lnx/0434133011).

When a claimant is found disabled at a listing, the Regulations provide a specific set of

instructions for determining whether medical improvement related to the claimant's ability to work

has occurred:

> If our most recent favorable decision was based on the fact that your
> impairment(s) at the time met or equaled the severity contemplated by the
> Listing of Impairments in appendix 1 of this subpart, an assessment of [the
> claimant's] residual functional capacity would not have been made. If medical
> improvement has occurred and the severity of the prior impairment(s) no longer
> meets or equals the same listing section used to make our most recent favorable
> decision, we will find that the medical improvement was related to [the
> claimant's] ability to work . . . If the appendix level of severity is met or
> equaled, the individual is deemed, in the absence of evidence to the contrary,
> to be unable to engage in substantial gainful activity. If there has been medical
> improvement to the degree that the requirement of the listing section is no
> longer met or equaled, then the medical improvement is related to [the
> claimant's] ability to work.

20 C.F.R. § 404.1594(c)(3)(i).  Therefore, to analyze whether Jimmerson had experienced medical

improvement related to his ability to work, the ALJ was required to assess whether Jimmerson still

met the criteria of Listing 13.13.[4]

---

[4] The Social Security Program Operations Manual System ("POMS") instructs that medical improvement does not relate to the ability to work if the CPD was based on a listing and "the individual still meets or equals that prior listing or *any of the subsections of that listing* . . . ." POMS DI 28005.015A.4, https://secure.ssa.gov/poms.nsf/lnx/0428005015 (emphasis added).

In his decision, the ALJ noted that a September 2013 CT scan of Jimmerson's brain revealed a left frontal lobe mass positive for Grade III astrocytoma and obstructive aphasia.  (Tr. 29, 441, 470-71, 477).  On September 5, 2013, Jimmerson underwent a left frontal parietal tumor resection to remove the astrocytoma.  (Tr. 478).  The ALJ observed that subsequent brain MRIs in June 2016 and January 2017 showed stable post-surgical findings with no evidence of local recurrence or intracranial metastatic disease.  (Tr. 29, 651-52, 695).  Other MRIs confirmed the finding of no residual or recurrent astrocytoma or intracranial metastatic disease.  (Tr. 31, 695, 847, 954-55, 1038, 1047).  Jimmerson points to no contradictory evidence, and the undersigned has found none in the record.

By comparing the evidence available in September 2013 to the evidence available as of September 20, 2019, the ALJ appropriately determined that the grade III astrocytoma that had led to Jimmerson's disability at Listing 13.13 was no longer present.  Accordingly, the ALJ proceeded with the requirements of 20 C.F.R. § 404.1594(c)(3)(i), correctly finding Jimmerson's medical improvement "was related to [his] ability to work" and proceeding with the sequential process outlined in 20 C.F.R. § 416.994(b)(5)(i-vii).

### B. The ALJ Applied the Correct Legal Standard to Opinion Evidence, But Factual Errors Impacted His Analysis, Requiring Reversal

Jimmerson's second and final argument is that the ALJ inappropriately assessed the opinions of treating physicians Dr. Jonathan Storey, Dr. Alvin Tenchavez, and Dr. Tom Payne, and examining psychologist Dr. June Nichols, each of whom rendered an opinion supporting Jimmerson's allegedly disabling symptoms.  (Doc. 14 at 31-35).

**1. The ALJ Applied the Appropriate Legal Standard[5]**

As the Commissioner notes (doc. 15 at 13), Jimmerson relies on law that predates the most recent regulatory framework an ALJ applies to evaluate opinion evidence.  Specifically, Jimmerson argues the "treating physician rule" applies here.  This rule was part of the regulatory framework applicable to applications filed before March 27, 2017.  Under those regulations (and Eleventh Circuit caselaw interpreting them) a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), in turn citing 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted).  However, for claims filed on or after March 27, 2017, such as this case,[6] an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).  Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account the following five factors:

> (1) Supportability
> (2) Consistency
> (3) Relationship with the claimant (which includes)
>> (i) Length of the treatment relationship
>> (ii) Frequency of examinations
>> (iii) Purpose of the treatment relationship
>> (iv) Extent of the treatment relationship

---

[5] Although the undersigned concludes the ALJ's factual errors warrant remand to reconsider the opinion evidence, the parties' dispute of what standard applies potentially impacts how the ALJ considers opinion evidence on remand.  The undersigned thus considers that dispute even though it is immaterial to the error requiring remand.

[6] "Adjudicators use the date of the initial request for review of the disability cessation determination as the filing date for a new period of disability."  SSR 13–3p, 2013 WL 785484, at *4 (Feb. 21, 2013).  Jimmerson filed his initial request for review on May 11, 2017.

(v) Examining relationship
(4) Specialization
(5) Other factors

20 C.F.R. § 404.1520c(c).  The ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors.  20 C.F.R. § 416.920c(b)(2).

While the Eleventh Circuit has not weighed in on the applicability of the treating physician rule in a published decision, another district court recently summed up its state:

> [W]hether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question. *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). The Eleventh Circuit has not spoken on the issue. *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104, n.4 (11th Cir. Aug. 12, 2021) ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). And district courts have diverged in their approaches. *See Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was a non-issue -- under both standards, ALJ's opinion was substantially supported); *Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid); *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies); *Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them).

*Simon v. Acting Comm'r of the Soc. Sec. Admin.*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at
*4 (M.D. Fla. Sept. 17, 2021). And in a more recent unpublished decision, the Eleventh Circuit
assumed the new regulations supplanted the treating physician rule. *Matos v. Comm'r of Soc. Sec.*,
No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no
longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating
source or explain why good cause exists to disregard the treating source's opinion."). *See also
Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. Jan. 27,
2021) (noting without comment that "[f]or claims filed on or after March 27, 2017 . . . no
significant weight is given to statements made by treating physicians as opposed to non-treating
medical sources.").

Rather than provide any argument in his brief or reply as to why the treating physician rule
is still appropriate, Jimmerson simply assumes its applicability. It is only in a supplemental brief
that Jimmerson acknowledges the issue, relying heavily on the Eleventh Circuit's decision in
*Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908 (11th Cir. 2021). (Doc. 17). There are multiple
problems with Jimmerson's argument that *Simon* controls the outcome here. Most importantly,
the opinion Jimmerson cites was withdrawn, and a different opinion substituted after rehearing.
*See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1097 (11th Cir. 2021) ("The opinion
previously issued as 1 F.4th 908 (11th Cir. 2021), is withdrawn and the following opinion is issued
in its stead."). While the portion of the withdrawn opinion Jimmerson cites indicates the treating
physician rule is similar to the new regulations, the substituted opinion specifically disclaims any
need to consider the impact of the new regulations on the treating physician rule because the

plaintiff's claim was decided under the old regulations.[7]  *Simon*, 7 F.4th at 1104 n.4 ("Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise.").  To the extent Jimmerson argues the withdrawn opinion is controlling or even informative, he is mistaken; it is a nullity.

The remainder of the cases Jimmerson cites are also inapplicable, either because they were decided under the prior regulations (citing the substituted *Simon* decision only for the previously applicable legal standard), or because the court did not decide one way or the other which regulations applied.  Of particular note, Jimmerson points to *Mayfield v. Comissioner, Soc. Sec. Administrtaion*, No. 7:20-CV-01040-ACA, 2021 WL 5300925 (N.D. Ala. Nov. 15, 2021) and *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501-JHE, 2021 WL 4409092 (N.D. Ala. Sept. 27, 2021), both cases from this district.  (Doc. 17 at 2-5), In *Mayfield*, Judge Axon found remand was required whether the new regulations or precedent pre-dating those regulations was applied.  2021 WL 5300925 at *5.   And in *Humber*, the undersigned included a footnote observing that it was unnecessary to decide whether the treating physician rule still applied in this circuit.  2021 WL 4409092 at *6, n.10.  The issue in that case was that the ALJ had failed to articulate *at all* how he considered an opinion in the record, preventing meaningful court review—not that the ALJ failed to provide appropriate weight to the opinion.  *Id.* at *6.  Neither of these cases persuade the

---

[7] In a recent decision, the Second Circuit took the same tack—acknowledging the regulatory change, but declining to address how it impacted the treating physician rule in the context of a case decided under the old regulations.  *Colgan v. Kijakazi*, 22 F.4th 353, 360 n.2 (2d Cir. 2022).

undersigned that adhering to the treating physician rule is still required in the face of regulations conspicuously omitting that standard.

Although the Eleventh Circuit has not specifically said in a published decision that the new regulations displace the previous case law about the treating physician rule, the regulations as written do not support continue use of the rule. This interpretation is supported by the Eleventh Circuit's unpublished opinions, which assume the new regulations supplanted the treating physician rule. In the absence of any argument from Jimmerson that the regulations are invalid or that the treating physician rule must be applied under the new regulations, the undersigned finds the ALJ needed to do no more than consider the opinion evidence as required by the regulations applicable to Jimmerson's claim.

### 2. The ALJ's Factual Errors Impacted His Consideration of the Opinion Evidence

Although the undersigned concludes the ALJ did not err by failing to give Jimmerson's treating physician opinions controlling weight, the ALJ's evaluation of the opinion evidence in this case is not supported by substantial evidence because the ALJ made factual misstatements regarding Jimmerson's functional self-report.

In assessing Jimmerson's capabilities, the ALJ repeatedly mischaracterized Jimmerson's reports of his own capabilities. Specifically, citing Jimmerson's function report, the ALJ considered the fact that Jimmerson "could independently handle his own finances" in concluding Jimmerson had moderate limitations in concentration, persistence, and maintaining pace and in adapting and managing himself. (Tr. 28). The ALJ also made the same finding in formulating Jimmerson's RFC. (Tr. 31). Contrary to the ALJ's characterization, Jimmerson[8] checked boxes

---

[8] A third party prepared Jimmerson's function report for him. (Doc. 253).

under the "Money" section on the function report form indicating he was *not* able to pay bills, count change, handle a savings account, or use a checkbook/money orders.  (Tr. 249).  Instead, Jimmerson explained that "Mom takes care of bills out of my account.  I use debit card – no change to count.  No savings & do not use checkbook."  (*Id.*).  Jimmerson reported that his ability to handle money had changed since his alleged disability began in that he "was independent & could handle [his] own account" but "[d]oes not have mathematical ability anymore."[9]  (Tr. 250).  No other evidence concerning Jimmerson's ability to handle his finances appears in the function report. (*See* tr. 246-53).

Considering the opinion evidence in this case, the ALJ found a report by state agency psychiatric consultant Dr. Guendalina Ravello (who reviewed Jimmerson's medical records) to be persuasive because of its consistency with, *inter alia*, Jimmerson's "daily activities."  (Tr. 32). The ALJ also found an opinion by examining licensed psychologist Dr. Mary Arnold, which concluded in part that Jimmerson "could manage his own funds," to be consistent with Jimmerson's daily activities.  (*Id.*).  However, the ALJ found the four opinions Jimmerson notes— those of Dr. Storey, Dr. Tenchavez, Dr. Payne, and Dr. Nichols—were not persuasive.  (Tr. 32). The first three of these opinions are single-page, mostly yes-or-no questionnaires in which each doctor offered a similar opinion characterized by the ALJ as "that the claimant could not maintain attention for two hours, could not be punctual with customary tolerance, could not sustain an

---

[9] Some of the ALJ's other characterizations of Jimmerson's self-report are questionable, but not directly contradictory.  For example, while the ALJ correctly noted Jimmerson reported he had not been fired or laid off from a job because of problems getting along with other people (tr. 28), the utility of this to establish anything about Jimmerson's allegedly changed condition postdating his brain surgery is minimal if anything since the ALJ acknowledges Jimmerson has not worked since his surgery (tr. 27).  The ALJ also noted Jimmerson lives alone (tr. 28), but apparently discounted Jimmerson's qualification that his mother checks on him daily (tr. 248).

ordinary routine without special supervision, could not appropriately interact with supervisors and coworkers, and would be off task a lot in an eight-hour day." (Tr. 32, 831, 832, 1062). The ALJ found these opinions "inconsistent with the medical records as a whole which state that there is no evidence of altered affect, lack of comprehension, or an inability to maintain attention, to include the opinions and testimony discussed herein." (Tr. 32). Dr. Nichols' opinion is a lengthier psychological evaluation in which she concluded Jimmerson had, *inter alia*, "significant problems with mental control and attention . . . problems with short term working memory . . . [and] extreme deficits with acquired knowledge," ultimately concluding in another medical source questionnaire that these problems imposed limitations inconsistent with maintaining a job. (Tr. 1069-71). Of note, Dr. Nichols also found Jimmerson could not manage his finances reliably and independently. (Tr. 1069). The ALJ found Dr. Nichols' opinion unpersuasive "because it is inconsistent with the medical records as a whole and the opinions and testimony discussed herein." (Tr. 32).

Examining the ALJ's decision, it is impossible to conclude the ALJ's erroneous assessment of Jimmerson's function report had no effect on how he persuasive he found the opinion evidence—particularly Dr. Nichols' opinion, which specifically discusses Jimmerson's ability to manage his finances. And while it is possible the ALJ might come to the same conclusion with the benefit of a correct reading of Jimmerson's function report, the court's role is not to weigh the evidence. *Walden*, 672 F.2d at 838. Accordingly, remand is warranted. On remand, the Commissioner should reassess the evidence, including opinion evidence, in light of the functional limitations Jimmerson actually reported.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security upholding the

cessation of Jimmerson's disability insurance benefits is **REVERSED**, and this action is **REMANDED**.

DONE this 18th day of March, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE